UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DANNETTE F. CAMPBELL,

               Plaintiff,                          Case No.
                                                     Hon.

vs.

FOREFRONT HEALTHCARE LLC,
a Delaware corporation, d/b/a (in Michigan)
FOREFRONT SUPPORT SERVICES LLC,

               Defendant.
_____/

James C. Baker (P62668)
Attorney for Plaintiff
STERLING ATTORNEYS AT LAW, P.C.
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
jbaker@sterlingattorneys.com

_____/

# COMPLAINT AND JURY DEMAND

Plaintiff Dannette F. Campbell, by her attorney James C. Baker of Sterling Attorneys at Law, P.C., for her Complaint and Jury Demand against Defendant, Forefront Healthcare LLC, submits the following:

## JURISDICTION AND PARTIES

1.    This is an action for employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq.*; 42

USC 1981; and Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*, arising out of Plaintiff's employment relationship with Defendant.

2.    Plaintiff Dannette F. Campbell (hereinafter "Plaintiff," "Dannette," "Ms. Campbell," or "Plaintiff Campbell") is an individual who resides in Monroe, Michigan, within the Eastern District of Michigan.

3.    Defendant    Forefront    Healthcare    LLC    ("Defendant"    or "Forefront") is a Delaware limited liability company authorized to transact and conduct business in Michigan, does business in Michigan as Forefront Support Services LLC, and maintains a principal place of business in Monroe, Michigan, within the Eastern District of Michigan.

4.    The events giving rise to this cause of action occurred within the Eastern District of Michigan.

5.    This Court has subject matter jurisdiction of Plaintiff's claims pursuant to 28 USC 1331 (federal question), 28 USC 1343 (civil rights) and 28 USC 1367 (supplemental jurisdiction).

6.    Plaintiff timely files this Complaint within 90 days of receiving her EEOC right to sue notice; the right to sue was issued on December 4, 2023.

## BACKGROUND FACTS

7.    Plaintiff is an African-American woman.

8.    Plaintiff became Defendant's employee on or about April 11, 2022 when Defendant took over the facility in which Plaintiff was working.

2

9.     Plaintiff's employment was involuntarily terminated by Defendant on August 31, 2023.

10.     During her period of employment, Plaintiff did not miss events, and did not call off from work.

11.     Preceding her termination, and from November 2, 2022, Plaintiff's job title was Catering Manager.

12.     On November 2, 2022 Plaintiff was offered the Catering Manager position on a temporary basis earning $55,000 per year.

13.     Preceding her tenure as Catering Manager, Defendant has consecutively employed two Caucasian Catering Managers, a man who, on information and belief, was paid an annual salary equivalent to $75,000 per year, and a woman who, information and belief, was paid $75,000 per year.

14.     On further information and belief, while Plaintiff was offered the position of Catering Manager on a temporary basis, the two Caucasian Catering Managers were not given "temporary" status.

15.     Following Defendant's required 90-day temporary status, Plaintiff was given the position permanently and told she would be earning $60,000 per year.

16.     Despite the raise, Plaintiff was still earning the equivalent of $15,000 per year less than her Caucasian predecessors.

17.    It was later discovered that Plaintiff was not paid the equivalent of $60,000 per year; rather, her rate broken down on an hourly basis equated to $28.85 per hour, or just over $57,000 per year.

18.    Defendant's General Manager would discuss Plaintiff's salary in the company of Plaintiff's co-workers, with the General Manager saying "she was paying [Plaintiff] a lot."

19.    Plaintiff was qualified for her positions she held with Defendant, including that of Catering Manager.

20.    Plaintiff was as qualified as her Caucasian predecessors.

21.    Plaintiff complained to Human Resources and management about being underpaid.

22.    On information and belief, it was her complaints that led to her being offered $28.85 per hour equivalent salary, which still was not the same as what her Caucasian predecessors were paid.

23.    While employed, Plaintiff was one of a few African-American managers, the overwhelming majority of management was Caucasian.

24.    Defendant historically employed Caucasians.

25.    On August 31, 2023, Plaintiff reported to work at 7:00 a.m. for a special event set-up.

26.    The event was a family repass/luncheon after a funeral service.

27.    The set-up completion time as stated was 11:00 a.m.

28.    Defendant's Caucasian Event Planner and Caucasian General Manager are responsible for scheduling staff and time for all events; including informing the staff of any completion times and/or changes in the schedule.

29.    Unbeknownst to Plaintiff, Defendant's Caucasian Event Planner and/or Caucasian General Manager caused a set-up time change for the August 31 event, meaning the set-up time was moved up, the deadline was earlier than 11:00 a.m.

30.    It was Defendant's policy to inform staff of any time changes, with it being Defendant's Caucasian Event Planner's and/or Caucasian General Manager's duty to inform Plaintiff that the set-up deadline had been moved up.

31.    Despite not being informed of the time change, Defendant's Caucasian General Manager held Plaintiff accountable for not having the event set up by the earlier time.

32.    This General Manager terminated Plaintiff's employment in the middle of the event.

33.    As this Caucasian General Manager was terminating Plaintiff and escorting Plaintiff to the door of the facility, she ordered Plaintiff to surrender her badge, and was then overheard by Plaintiff saying "fucking nigger."

34.    Plaintiff had no prior history of any performance issues, deficiencies, write-ups, or discipline.

35.    Defendant maintains a progressive discipline policy; however, Defendant's General Manager informed Plaintiff that because of the day's events, Defendant was going to move straight forward with termination.

36.    The events of August 31, 2023 occurred after Plaintiff had reported being underpaid as compared to her Caucasian predecessors.

37.    Defendant treated Plaintiff differently than her Caucasian predecessors in that she was underpaid by as much as $20,000 per year.

38.    Defendant treated Plaintiff differently than her Caucasian counterparts and Defendants Caucasian employees, in that Defendant did not terminate Caucasian employees for a first-violation; rather, Defendant employed its progressive discipline policy when addressing purported transgressions by white employees.

39.    Plaintiff denies any transgression or violation of company policy, let alone anything that warranted a first-offense termination.

40.    The conduct of the General Manager as she was terminating Plaintiff reflected her predisposition to discriminate against African American employees.

41.    Plaintiff was fired because she is black.

42.    Plaintiff requested meetings with Human Resources and others, as was denied the meetings because she is black.

43.     Plaintiff's involuntary termination was the culmination of race discrimination, was retaliatory because she complained of discriminatory pay practices, and the comment "fucking nigger" is direct evidence of the Caucasian decision-maker's racially-motivated animus toward Plaintiff.

44.     Defendant treated Plaintiff differently because of her race, including what has been outlined herein.

45.     Defendant, by its agents, engaged in unfair and discriminatory treatment against an African-American employee, Plaintiff, unfair and discriminatory treatment that culminated in Plaintiff's unjustified termination.

## COUNT I

### RACE DISCRIMINATION IN VIOLATION OF TITLE VII

46.     Plaintiff incorporates the preceding paragraphs by reference.

47.     At all material times, Plaintiff Campbell was an employee and Defendant Forefront was her employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 USC 2000-e *et seq.*

48.     At all material times Plaintiff was qualified as a manager for Defendant.

49.     Plaintiff's qualification was evidenced by performance observations, and statements by co-workers and subordinate employees.

50.     Further, Plaintiff suffered no written discipline in her employment.

51.    Defendant, by its agents, treated Plaintiff differently, discriminated against her, singled her out, and terminated her due to Plaintiff's race.

52.    Defendant, by its agents, was predisposed to discriminate against Plaintiff on the basis of race, and acted in accordance with that predisposition.

53.    The discriminatory practices at issue were intentional and willful, and engaged in with malice or with reckless indifference to the rights and sensibilities of Plaintiff.

54.    There exists direct evidence that Plaintiff's race was a factor in her involuntary termination.

55.    As a direct and proximate result of Defendant's actions, by its agents, the terms, conditions, and privileges of Plaintiff's employment were adversely affected and she suffered an unwarranted and involuntary termination.

56.    As a direct and proximate result of the Defendant's wrongful and discriminatory treatment of Plaintiff, Plaintiff has suffered injuries and damages, including, but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## COUNT II

## RETALIATION IN VIOLATION OF TITLE VII

57.   Plaintiff incorporates the preceding paragraphs by reference.

58.   Title VII prohibits retaliation against persons who complain about race discrimination.

59.   Plaintiff engaged in activity protected by Title VII when she complained of and opposed unlawful race discrimination in the form of disparate pay for Caucasian versus African American employees.

60.   Defendant's retaliatory treatment of Plaintiff as set forth above, including termination as a first offense for a purported scheduling violation was in violation of the anti-retaliation provisions of Title VII.

61.   The actions of Defendant by its agents were intentional, in deliberate disregard for the rights and sensibilities of Plaintiff.

62.   As a direct and proximate result of the Defendant's wrongful and retaliatory treatment of Plaintiff, Plaintiff has suffered injuries and damages, including, but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and other benefits; mental and emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## COUNT III

## RACE DISCRIMINATION IN VIOLATION OF 42 USC 1981

63.    Plaintiff incorporates the preceding paragraphs by reference.

64.    At all material times, Plaintiff was an employee and Defendant was her employer, covered by and within the meaning of 42 USC 1981.

65.    Defendant engaged in discriminatory employment practices based on race.

66.    Defendant treated Plaintiff differently, subjected her to disparate pay, and terminated her with race being a factor.

67.    Defendant was predisposed to discriminate against Plaintiff on the basis of her race, and acted in accordance with that predisposition.

68.    The discriminatory practices at issue were intentional and willful, and engaged in with malice or with reckless indifference to the rights and sensibilities of Plaintiff.

69.    As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiff's employment were adversely affected, she was selected for pretextual termination.

70.    As a direct and proximate result of the Defendant's wrongful and discriminatory treatment of Plaintiff, she has suffered injuries and damages, including, but not limited to, loss of past, present, and future earnings and earning capacity; loss of the value of fringe and other benefits; mental and

emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful employment.

## COUNT IV

## RACE DISCRIMINATION AND RETALIATION
## IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

71.    Plaintiff incorporates the preceding paragraphs by reference.

72.    At relevant times, Plaintiff was an employee and Defendant was her employer covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101, *et seq*.

73.    Michigan's Elliott-Larsen Civil Rights Act prohibits discrimination on the basis of race.

74.    Defendant treated Caucasian employees more favorably than Plaintiff.

75.    Defendant's agent, namely its General Manager, engaged in racist behaviors, including calling Plaintiff a "fucking nigger."

76.    Defendant's action in disciplining Plaintiff, terminating her for a first offense, was based on pretext and impermissible considerations of Plaintiff's race.

77.    Defendant, by its agent, was predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

78.    Defendant's actions were intentional and engaged in with reckless disregard for Plaintiff's rights.

79.    As a direct and proximate result of Defendant's wrongful and discriminatory treatment of Plaintiff, she has suffered injuries and damages, including but not limited to, loss of past, present, and future earnings and earning capacity; loss of the value of fringe and other benefits; mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment; and the loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful employment.

## RELIEF REQUESTED

Wherefore, for the foregoing reasons, Plaintiff Dannette F. Campbell demands judgment against Defendant as follows:

1.    Compensatory damages in whatever amount she is found to be entitled;

2.    Exemplary damages in whatever amount she is found to be entitled;

3.    Punitive damages in whatever amount she is found to be entitled;

4.    Liquidated damages in whatever amount she is found to be entitled;

5.    A judgment for lost wages and benefits in whatever amount she is found to be entitled;

6.    An award of interest, costs, and statutory attorney fees as an element of damages; and

7.    Whatever other legal relief appears appropriate at the time of final judgment including but not limited to statutory relief.

## JURY DEMAND

Plaintiff Dannette R. Campbell by her attorney James C. Baker of Sterling

Attorneys at Law, P.C., requests a trial by jury.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By:   /s/ James C. Baker
      James C. Baker (P62668)
      Attorney for Plaintiff
      33 Bloomfield Hills Pkwy., Ste. 250
      Bloomfield Hills, MI 48304
      (248) 644-1500
      jbaker@sterlingattorneys.com

Dated: January 17, 2024